In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 16-1831

ROBERT LANCE WILSON,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 10521 — **Rebecca R. Pallmeyer**, *Judge.*

———————————

ARGUED FEBRUARY 15, 2017 — DECIDED SEPTEMBER 7, 2017

———————————

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In September 1998 one of Dr. Robert Lance Wilson's terminally ill patients was within hours of death. He was in pain (morphine no longer worked for him) and suffocating but had refused to have a breathing tube inserted. Wilson concluded that the only possible palliation was unconsciousness. As Wilson was injecting a drug

to achieve that objective, the patient's heart stopped. Wilson's travails then began.

The coroner classified the patient's death as murder, and the Illinois Department of Financial and Professional Regulation summarily suspended Wilson's medical license. He replied that his treatment was medically appropriate and demanded a hearing. According to Wilson, whose account we must accept for current purposes, the Department's top administrators were unconcerned about the propriety of the treatment, unwilling to learn about that subject, and personally offended when Wilson wanted a hearing. Wilson submits that they decided to kick him out of the profession without regard to the evidence.

It took the Department until March 2000 to hold any kind of hearing. By then the coroner's finding of homicide had been withdrawn and a criminal prosecutor had decided not to charge Wilson. But, according to Wilson, the Department's hearing was a farce with a foreordained outcome. His license was suspended for five years, retroactive to October 1998. He contested this result on two fronts: suits in both state and federal court.

The federal suit began in October 1999, before the Department held a hearing. The Department asked the federal judge to dismiss the suit, and the judge abstained under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), which the Supreme Court has applied to state civil and administrative proceedings in which units of state government attempt to implement state policies. *Trainor v. Hernandez*, 431 U.S. 434 (1977). The Department wanted the federal judge to dismiss Wilson's suit rather than stay it pending the outcome of the state litigation; the federal judge obliged.

The Department did not fare so well in state court. *Four times* a state judge vacated the Department's decision. After each of the first three, the Department reinstated its decision and the litigation continued. The Department's decision after the March 2000 hearing was set aside in April 2002, on two procedural grounds, by the Circuit Court of Cook County. The Appellate Court affirmed with respect to one of those grounds. *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897 (2003). Wilson remained subject to the summary suspension of 1998. Without offering Wilson a new hearing, a state administrative law judge made new findings in November 2006, and the Department entered a new five-year suspension in July 2007. It did not explain why the five years hadn't already expired.

In May 2008 the Circuit Court set aside this new suspension, again on grounds of procedural irregularity. The Department did not appeal, but at the new hearing the ALJ struck some testimony that had previously been allowed. The Department's third decision, dated July 2009, again suspended Wilson for five years, without credit for the 11 years that he had already been suspended. This third decision was set aside in July 2011; the Circuit Court found, for a third time, that procedural irregularities vitiated the decision. The Department did not appeal but entered a fourth suspension decision in April 2013, yet again for five extra years. Wilson's renewed contest in state court led to a definitive decision in his favor. The Circuit Court held in May 2014 that the evidence did not support suspension—that Wilson should not have been suspended for even one day, let alone more than 15 years. Indeed, in 2002 the deceased patient's estate had abandoned a civil suit filed against Wilson, so he was

not determined to have committed malpractice, let alone murder. The Department did not appeal.

Thus ended the state litigation. But the Department did not reinstate Wilson's license to practice medicine. In January 2016 it sent him a letter stating that, because by then he had not practiced during the last 17 years, he must complete a "graduate medical education program of *at least 3 years in length*" (emphasis added) before submitting to tests to determine whether he is fit to practice. In other words, the Department has taken the view that the Circuit Court's decision did not restore Wilson to practice, and that, even though he should not have been suspended, he must go back to school pretty much as if he had never had a medical education in the first place.

Late in 2014 Wilson returned to federal court, seeking damages under 42 U.S.C. §1983 for suspension without a hearing and the ensuing lengthy inability to practice his profession. Because state disciplinary proceedings and litigation have ended, *Younger* no longer requires abstention. But Wilson's second federal suit followed his first out the door. In 1999 a district judge ruled that Wilson had commenced suit too soon and must wait for the end of the state's administrative proceedings. In 2016 a different district judge ruled that Wilson had commenced suit too late—that the two-year statute of limitations applicable to §1983 suits in Illinois had been running since fall 1998 (when Wilson's license was suspended without a hearing) and had expired in 2000. 2016 U.S. Dist. LEXIS 35092 (N.D. Ill. Mar. 18, 2016). The district court failed to enter a proper final decision, but its order is appealable under the rationale of *Otis v. Chicago*, 29 F.3d 1159 (7th Cir. 1994) (en banc).

Aggrieved at being told that no suit, whenever filed, is permissible, Wilson's appellate lawyer contends that the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), comes to his rescue. *Heck* holds that a prisoner cannot use §1983 to challenge the validity of his conviction or to obtain other relief that necessarily implies the conviction's invalidity. Instead, the Court stated, any §1983 litigation must be deferred until the conviction has been set aside by appeal, collateral review, or pardon. The Court added that as long as the custody lasts, the statute of limitations does not run: "a §1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 489–90. *Heck* was extended to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997). Wilson contends that we should further extend *Heck* to professional disciplinary proceedings.

The problem with that proposal lies in the rationale of *Heck*. The Court based its analysis on the doctrine that damages actions cannot be used to contest custody. When the writ of habeas corpus (or a statutory substitute such as 28 U.S.C. §§ 2254 and 2255) is available, it is also exclusive. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). More: State prisoners who want collateral relief in federal court must exhaust their state remedies. 28 U.S.C. §2254(b)(1); *Rose v. Lundy*, 455 U.S. 509 (1982). But a federal challenge to a decision by a state's administrative agency is not subject to the requirement that collateral remedies are exclusive or to an exhaustion-of-remedies rule. Nonprisoners need not exhaust state remedies before suing under §1983. *Patsy v. Board of Regents*, 457 U.S. 496 (1982). Given the nature of its rationale, *Heck* cannot be extended to Wilson's situation. A litigant need not have a

state's administrative decision set aside in state court before invoking §1983.

Still, just as we asked why *Heck* blocks §1983 suits by persons contesting the fact or duration of their custody, so we must ask why the Court concluded its opinion in *Heck* by announcing that the §1983 claim does not accrue until the conviction has been set aside. Accrual is deferred, the Court stated, by analogy to the rule that "a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor". 512 U.S. at 489. See also *Manuel v. Joliet*, 137 S. Ct. 911, 921 (2017). And that doctrine is not limited to malicious-prosecution suits. It instantiates the more fundamental rule that a claim never accrues until the would-be plaintiff "has a complete and present cause of action". *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations and internal quotation marks omitted). That is a rule of federal law—and *Wallace* adds that the accrual of a §1983 claim is governed by federal law. *Ibid*.

Put the accrual doctrine of *Wallace* together with the district court's holding in 1999 that Wilson was forbidden to litigate in federal court while state proceedings were ongoing, and it follows that his §1983 claim for damages did not accrue until May 2014, when the state litigation ended. Defendants do not contend that Wilson could have joined a §1983 claim seeking damages with his administrative-review claim in state court; damages just were off the table until he finally prevailed in the administrative-review action. It follows that until May 2014 Wilson did not have a "complete and present cause of action" under federal law in either state or federal court. Wilson's current §1983 suit therefore is timely.

Wilson could have curtailed the duration of his *Younger* problem by not litigating in state court after the Department entered its post-hearing decision. With neither administrative nor judicial proceedings pending in Illinois, Wilson could have pursued a §1983 suit seeking damages. If he had avoided state litigation, the §1983 claim would have accrued in March 2000 and he would have had until March 2002 to sue in federal court. But the Department has not contended that this strategy was compulsory as a matter of either state or federal law. Wilson was entitled to ask a state court to vacate the Department's decision under Illinois law—and as long as that suit was pending he was locked out of federal court. It took much longer than Wilson could have anticipated to vindicate his rights, but the Department's doggedness in reinstating his suspension despite its multiple losses in state court does not supply a good reason to prevent §1983 litigation when at last it became possible.

The district judge who handled Wilson's first federal suit could, and probably should, have avoided the current contretemps by staying that suit rather than dismissing it. See *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 721 (1996) ("while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal … of damages actions"); *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988); *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013); *Simpson v. Rowan*, 73 F.3d 134, 138–39 (7th Cir. 1995). By asking the district judge to dismiss the first suit—and thus to set a potential trap for Wilson under the statute of limitations—the defendants brought into play a second doctrine: equitable estoppel. But we need not decide whether the defendants' motion to dismiss Wilson's first suit estops them from

pleading the statute of limitations once federal litigation re-sumed. It is enough to conclude that Wilson did not have a complete federal claim under §1983 until May 2014, when proceedings in state court ended, so as a matter of federal law his federal claim did not accrue until then.

The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.