**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KINO BONELLI,<br>     *Plaintiff-Appellant*,<br><br>v.<br><br>GRAND CANYON UNIVERSITY; GRAND CANYON EDUCATION INCORPORATED; GRAND CANYON UNIVERSITY CAMPUS POLICE AND PUBLIC SAFETY; BRIAN MUELLER,<br>     *Defendants-Appellees*,<br><br>and<br><br>JOE YAHNER; KENNY BYERS; MICHAEL MARTINEZ; ROBINSON, Officer; WASHINGTON, Officer; BRISTLE, Sergeant; WILEY, Sergeant; M. GRUPE, Officer; STEVE YOUNG, Individually, and in their capacity as officers and agents for Grand Canyon University and Grand Canyon University, Inc.,<br>     *Defendants*. | No. 20-17415<br><br>D.C. No.<br>2:20-cv-00143-SMB<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted November 16, 2021
Phoenix, Arizona

Filed March 11, 2022

Before:  Ronald Lee Gilman,[*] Daniel A. Bress, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Bress

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's dismissal, as time-barred, of a complaint brought by a former university student arising from a pair of on-campus incidents for which he was issued a disciplinary warning.

The panel held that plaintiff's claims were time-barred. Plaintiff brought his claims more than two years after he was injured, and there was no delayed accrual here based on the university's later review and retraction of plaintiff's disciplinary warning.

The panel rejected plaintiff's argument that under *Heck v. Humphrey*, 512 U.S. 477 (1994), his claims did not accrue

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

until the university rescinded his disciplinary warning. The panel concluded that *Heck* did not apply to plaintiff's claims. *Heck* relied on the principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments, a principle that applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement. Here, however, there was no conviction or confinement.

To the extent that plaintiff sought not the application of *Heck*, but a *Heck*-like rule of delayed accrual, his argument fared no better. His claims were not properly analogized to the tort of malicious prosecution, either factually or legally. Plaintiff knew or had reason to know of his claimed injuries—alleged seizures of his person and property, curbing of his First Amendment rights and related retaliation, and discrimination—when those acts occurred. Based on the allegations of his complaint, the disciplinary warning was perhaps an outgrowth of these same incidents. Whatever facial similarities that might exist between a university disciplinary process and a state criminal prosecution, plaintiff had not explained how the core principles reinforcing the malicious prosecution analogy— federalism, comity, consistency, and judicial economy— supported extending this analogy to the collegiate code-of-conduct inquiry alleged in his complaint.

**COUNSEL**

Krista R. Hemming (argued), The Hemming Firm, San Pedro, California, for Plaintiff-Appellant.

Nishan Wilde (argued) and Robert B. Zelms, Zelms Erlich LLP, Phoenix, Arizona, for Defendants-Appellees.

**OPINION**

BRESS, Circuit Judge:

The plaintiff in this case brought federal civil rights claims against his former university and its officials stemming from a pair of on-campus incidents. The question we consider is whether the plaintiff's claims were timely. If the claims accrued when the plaintiff knew or had reason to know of his alleged injuries, then his claims are untimely under the applicable two-year statute of limitations. Citing *Heck v. Humphrey*, 512 U.S. 477 (1994), however, the plaintiff argues that his claims did not accrue until the university withdrew its disciplinary warning against him. We hold that neither *Heck* nor a *Heck*-like rule of delayed accrual applies here. We therefore affirm the district court's dismissal of the plaintiff's complaint.

I

We recite the facts as alleged in the complaint, which in some respects provides only limited details. In August 2013, Kino Bonelli, a Black student, transferred to Grand Canyon University, or "GCU." On February 19, 2017, Bonelli attempted to enter GCU through its main entrance on the day of a campus event. When a campus public safety officer asked Bonelli for his student ID, Bonelli held up his ID card and indicated that he would present the ID to officers standing up ahead. After a series of heated interactions in which Bonelli alleges campus police officers acted belligerently, an officer took Bonelli's student ID and denied him entry onto the campus.

About a week later, Alan Boelter, GCU's Student Conduct Coordinator, informed Bonelli that he was being investigated for violating GCU's code of conduct because he

failed to comply with a request for identification.  Bonelli explained that he had shown the officers his ID and that they had confiscated it.  Boelter retrieved Bonelli's ID from campus police and returned it to him.  There was no further discussion between Bonelli and GCU about the February 19 incident.  Two months later, Bonelli completed his undergraduate degree and began a graduate program at GCU.

On July 25, 2017, in the early morning hours, Bonelli was studying on campus.  A GCU public safety officer asked Bonelli for his ID.  Bonelli complied with the request.  After searching Bonelli's name in a database, the officer determined Bonelli was enrolled at the school but not living on campus.  The officer informed Bonelli that GCU policy did not permit commuter students on campus at certain hours.  Bonelli alleges GCU had no such policy, and that he told the officer he was unaware of the policy.  Bonelli offered to leave, but the officer told Bonelli he could stay.  Bonelli left anyway.

Five days later, GCU's Campus Safety Supervisor, Michael Martinez, issued a campus-wide "BOLO," or "Be On The Lookout," for Bonelli.  The BOLO stated that, in February, Bonelli tried to enter GCU despite not being enrolled there, and that after refusing to show his ID, he became disorderly and remained on campus without permission.  The BOLO described Bonelli as a former student who had graduated in 2016 and was known to use his old student ID to access the school.  Bonelli alleges that the information in the BOLO was false.  Bonelli contacted GCU to get the BOLO lifted so he could attend class, and it was withdrawn about a week after it was issued.

Several days later, GCU contacted Bonelli and notified him that he had been reported for violations of the student

code of conduct for hostile and disruptive behavior and failure to comply with a directive from a school official. Bonelli disputed the allegations and submitted his version of the February and July 2017 incidents. During the investigation, Campus Safety Manager Steve Young stood by the allegations, despite knowing that they were fabricated.

On August 24, 2017, GCU issued Bonelli an "Official Disciplinary Warning." The warning specified that it was Bonelli's "first and only warning" and that, "if additional incidents occur, you are subject to additional measures including, but not limited to, removal from a course, removal from your program of study, failing grades, suspension and expulsion."

Bonelli was not involved in any further incidents. He eventually convinced GCU's Vice President and Dean of Institutional Effectiveness, Dr. Antoinette Farmer-Thompson, to investigate his disciplinary warning. According to Bonelli, Dr. Farmer-Thompson found that Bonelli was credible and that he had suffered civil rights violations and racial discrimination. On August 29, 2018, the disciplinary warning was removed.

Bonelli filed this lawsuit on January 20, 2020. He alleged that because of the 2017 incidents, he suffered distress, switched to online classes, was unable to use on-campus resources, and struggled to find a job after graduating. Bonelli asserted five causes of action. He brought the first three under 42 U.S.C. § 1983 for (1) unreasonable seizure of his person and property in February 2017, in violation of the Fourth Amendment; (2) unreasonable detention in July 2017; and (3) violation of his First Amendment rights stemming from the February 2017 incident, based on the officers allegedly retaliating

against Bonelli for his speech and preventing him from complaining about them by seizing his ID.[1]   Bonelli also alleged racial discrimination under 42 U.S.C. §§ 1981 and 2000d (Counts 4 and 5).

The district court found Bonelli's claims untimely and dismissed his complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Bonelli's appeal is timely because it was noticed within 180 days of the district court's order, and no separate judgment was entered.  *See* Fed. R. App. P. 4(a)(7)(A); *Stephanie-Cardona LLC v. Smith's Food & Drug Ctrs., Inc.*, 476 F.3d 701, 703–05 (9th Cir. 2007).

## II

Reviewing de novo, *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017), we hold that Bonelli's claims were time-barred.  Bonelli brought his claims more than two years after he was injured, and there is no delayed accrual here based on the university's later review and retraction of Bonelli's disciplinary warning.

---

[1] Claims under § 1983 can be brought only against state actors. *West v. Atkins*, 487 U.S. 42, 48 (1988).  GCU is a private university, but Bonelli alleges that defendants acted under color of state law.  Although defendants argued otherwise below, Bonelli responded, *inter alia*, that GCU campus police act under color of state law because they are certified under Arizona law.  The district court did not reach the state action question, and defendants have not argued on appeal that Bonelli's § 1983 claims fail for this additional reason.  We thus assume for purposes of this appeal that Bonelli has plausibly alleged that defendants acted under color of state law.  *See, e.g.*, *Chavez v. Robinson*, 12 F.4th 978, 996 n.9 (9th Cir. 2021); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 n.1 (9th Cir. 2020).

A

The statute of limitations for federal civil rights claims under sections 1981, 1983, and 2000(d) is "governed by the forum state's statute of limitations for personal injury actions." *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (per curiam) (quotation marks and alterations omitted); *see also Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004). The parties agree that, under Arizona law, the limitations period for each of Bonelli's claims is two years. *See* Ariz. Rev. Stat. § 12-542.

Although "state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Bird*, 935 F.3d at 743 (quotation marks omitted); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). The general rule is that a civil rights claim accrues under federal law "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (quotation marks omitted); *see also Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) (describing this as the "general common law principle").

We have held that this traditional accrual rule applies to the constitutional and statutory violations that Bonelli asserts here. For Fourth Amendment violations, "federal law holds that a cause of action for illegal search and seizure accrues when the wrongful act occurs . . . even if the person does not know at the time that the search was warrantless." *Belanus v. Clark*, 796 F.3d 1021, 1026 (9th Cir. 2015) (citation omitted); *see also Klein v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017) ("In a traditional Fourth

Amendment case, the plaintiff is placed on constructive notice of the illegal conduct when the search and seizure takes place."). By his allegations, Bonelli knew that he was wrongfully detained, and his student ID wrongfully seized, on the days that each incident occurred. The statute of limitations on Counts 1 and 2, both § 1983 claims premised on Fourth Amendment violations, thus began to run on February 19, 2017 and July 25, 2017, respectively.

We have likewise applied the traditional accrual rule to § 1983 claims alleging First Amendment violations, including First Amendment retaliation. *See, e.g.*, *Canatella v. Van De Kamp*, 486 F.3d 1128, 1133–34 (9th Cir. 2007) (explaining that a First Amendment claim accrued at the time of the alleged injury); *Maldonado v. Harris*, 370 F.3d 945, 954–56 (9th Cir. 2004); *Western Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156–57 (9th Cir. 2000). Thus, Bonelli's Count 3 § 1983 claim alleging First Amendment violations also accrued on February 19, 2017.

Counts 4 and 5, respectively, allege racial discrimination under § 1981, which forbids racial discrimination in contractual relationships, and § 2000d, which forbids such discrimination "under any program or activity receiving Federal financial assistance."[2] We have explained that the usual accrual rule—that a claim "accrues under federal law when the plaintiff knows or has reason to know of the actual injury"—governs § 1981 claims alleging racial

---

[2] Defendants argue that Bonelli forfeited any challenge to the dismissal of his § 1981 and § 2000d claims because he did not specifically discuss them in his opening brief. But Bonelli's arguments apply equally across all his claims, and his race-discrimination claims arise out of the same February and July 2017 incidents. There is no prejudice to the defendants in treating these claims as preserved, *see Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002), and we thus address them.

discrimination, as well as federal civil rights claims generally. *Lukovsky*, 535 F.3d at 1048. *Lukovsky* thus confirms that Bonelli's § 1981 and § 2000d claims also accrued at the time of his alleged injury. Although Bonelli is not specific as to GCU's allegedly discriminatory actions, he does not claim that GCU engaged in discriminatory acts beyond August 24, 2017. And there is no dispute that Bonelli was aware of his alleged injuries by that date.

We thus conclude that Bonelli had "complete and present cause[s] of action" by August 24, 2017, at the latest. *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012). But Bonelli did not file his complaint until January 20, 2020, more than two years later. Under traditional accrual principles, his action is untimely.

B

Resisting this, Bonelli invokes *Heck* to argue that his claims did not accrue until August 29, 2018, when GCU rescinded Bonelli's disciplinary warning. But we conclude that *Heck* does not apply to Bonelli's claims.

In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. In other words, unless its conditions are satisfied, the "*Heck* bar" prevents a prisoner from bringing a § 1983 claim at all. *See id.*

*Heck* further explained, as a corollary, that "a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–90.   Here *Heck* analogized to the common law tort of malicious prosecution, one element of which "is termination of the prior criminal proceeding in favor of the accused." *Id.* at 484.  It is this aspect of *Heck* that Bonelli latches onto.  He argues we should apply *Heck*'s deferred accrual rule so that his claims did not accrue until GCU rescinded his disciplinary warning, which was less than two years before he filed suit.

Bonelli's reliance on *Heck* is misplaced.  *Heck* relied on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," a principle that "applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486.  Here, however, there was no conviction or confinement.  As we have explained, "[w]here there is no 'conviction or sentence' that may be undermined by a grant of relief to the plaintiffs, the *Heck* doctrine has no application." *Martin v. City of Boise*, 920 F.3d 584, 613 (9th Cir. 2019); *see also Roberts v. City of Fairbanks*, 947 F.3d 1191, 1198 (9th Cir. 2020) ("The absence of a criminal judgment here renders the *Heck* bar inapplicable; the plain language of the decision requires the existence of a conviction in order for a § 1983 suit to be barred.").

The Supreme Court's decision in *Muhammad v. Close*, 540 U.S. 749 (2004) (per curiam), is instructive.  In that case, the Court considered whether *Heck* applied to a challenge to an inmate's prison disciplinary proceedings "that threaten[ed] no consequence for his conviction or the duration of his sentence." *Id.* at 751.  *Muhammad* held that *Heck* did not apply in those circumstances.  Because the

prisoner was not challenging "the fact or duration of [his] underlying sentence," "[h]is § 1983 suit challenging [the disciplinary proceedings] could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754–55.

Bonelli cannot show how his § 1983 claims would be at odds with any conviction or sentence. By its terms, *Heck* does not apply here. *Cf. Wilson v. Ill. Dep't of Fin. & Pro. Regul.*, 871 F.3d 509, 512 (7th Cir. 2017) (holding that *Heck* does not extend to professional disciplinary proceedings).

C

To the extent that Bonelli seeks not the direct application of *Heck*, but a *Heck*-like rule of delayed accrual, his argument fares no better. If a plaintiff has a "complete and present cause of action," his claim accrues under federal law. *Pouncil*, 704 F.3d at 574. We cannot brush off that basic precept and elongate the limitations period on our own. Bonelli does not advocate that we do so, at least not directly. Instead, Bonelli's more subtle reliance on *Heck* consists of attempting to analogize his claims to the tort of malicious prosecution, which *Heck* also invoked by way of analogy. *See* 512 U.S. at 484–85. Malicious prosecution has a favorable-termination requirement, *id.* at 485–86, and Bonelli suggests that his claims likewise required the favorable termination of his university disciplinary warning.

The problem for Bonelli is that his claims are not properly analogized to the tort of malicious prosecution, either factually or legally. Sections 1981 and 2000d protect against racial discrimination; neither of these claims sounds in malicious prosecution. The same is true with Bonelli's § 1983 claims. None of Bonelli's claims depended on GCU

rescinding the disciplinary warning. Bonelli knew or had reason to know of his claimed injuries—alleged seizures of his person and property, curbing of his First Amendment rights and related retaliation, and discrimination—when those acts occurred. Based on the allegations of his complaint, the disciplinary warning was perhaps an outgrowth of these same incidents. But the tort of malicious prosecution "challenge[s] the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (quoting *Heck*, 512 U.S. at 484). And that is not the nature of Bonelli's claims.

Setting aside that this lawsuit is not about criminal prosecutions, Bonelli challenges not the process that was brought to bear against him through the disciplinary warning, but discrete incidents that allegedly produced immediate injuries. It is not apparent that any of his claims would necessarily imply the invalidity of his disciplinary warning, either. *See Heck*, 512 U.S. at 487; *see also Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 639–40 (6th Cir. 2007) (holding that an analogy to *Heck* and malicious prosecution was inapt because plaintiff's claims were "not dependent on a determination" that the findings in a juvenile-court proceeding were wrong). Bonelli thus invokes GCU's disciplinary warning process not as a legal impediment that prevented him from bringing suit, but as a fortuity that should allow him to delay bringing his claims. We do not think the analogy to malicious prosecution can be deployed in that manner. "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391.

Of course, even in a "classic malicious prosecution" situation, the injury "first occurs as soon as legal process is brought to bear on a defendant." *McDonough*, 139 S. Ct. at 2160. And in that context the law steps in and does provide for a later accrual only upon the favorable termination of the prosecution. *Id.* at 2156. But the reason for that customized accrual rule is important, and it shows why Bonelli's attempted analogy to malicious prosecution is unpersuasive.

As the Supreme Court explained in *McDonough*, we impose a favorable-termination requirement for malicious prosecution based on "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 2157; *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on Law of Torts § 119, p. 874 (5th ed. 1984). Those "concerns track [the] 'similar concerns for finality and inconsistency that have motivated th[e] Court to refrain from multiplying avenues for collateral attack on criminal judgments through civil tort vehicles such as § 1983.'" *McDonough*, 139 S. Ct. at 2157 (quoting *Heck*, 512 U.S. at 484).

Whatever facial similarities that might exist between a university disciplinary process and a state criminal prosecution, Bonelli has not explained how the "core principles" reinforcing the malicious prosecution analogy— "federalism, comity, consistency, and judicial economy," *id.* at 2158—support extending this analogy to the collegiate code-of-conduct inquiry alleged in his complaint. Bonelli cites no case taking that approach. *Cf. Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920–21 (2017) (explaining that courts will not always "adopt wholesale the rules that would apply in a suit involving the most analogous tort" because "[c]ommon-law principles are meant to guide rather than

control the definition of § 1983 claims, serving 'more as a source of inspired examples than of prefabricated components'" (quoting *Hartman v. Moore*, 547 U.S. 250, 258 (2006))).  If anything, Bonelli effectively suggests that he was required to exhaust GCU's internal processes before pursuing his § 1983 claim.  But it is "the settled rule" that "exhaustion of state remedies is *not* a prerequisite to an action under . . . § 1983." *Pakdel v. City & County of S.F.*, 141 S. Ct. 2226, 2230 (2021) (quoting *Knick v. Township of Scott*, 139 S. Ct. 2162, 2167 (2019)).

If Bonelli had filed suit during the pendency of GCU's review of his disciplinary warning, the district court could have considered whether to stay the case pending completion of that process.  *See, e.g.*, *Doe v. Univ. of Ky.*, 860 F.3d 365, 367–68 (6th Cir. 2017); *see also Wallace*, 549 U.S. at 393–94.  But Bonelli's position on appeal would mean he would have no cognizable § 1983 claim at all, unless and until that process terminated in his favor.  *See McDonough*, 139 S. Ct. at 2158 & n.7; *Heck*, 512 U.S. at 486–87.  Although that would conveniently prevent Bonelli's own claims from now being untimely, it would likely forestall many other § 1983 claims, without adequate legal justification.  And it would do so in a context much different than *Heck* or *McDonough*.  Here, the implication of Bonelli's argument is that if his university disciplinary warning had not been rescinded (*i.e.*, favorably terminated), he might have no further recourse at all.  We do not think the malicious prosecution analogy can be stretched to impose such a hard bargain in the context before us.

*       *       *

Because plaintiff's suit was untimely, the judgment of the district court is

**AFFIRMED.**