Filed 7/19/22  O'Shea v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MARY B. O'SHEA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN DIEGO et al., <br><br> Defendants and Respondents. | D079241 <br><br><br> (Super. Ct. No. 37-2020-00016628-CU-CR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Mary O'Shea, in pro. per., for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, Elizabeth L. Atkins, and Tyler L. Krentz, Deputy City Attorneys, for Defendants and Respondents.


I

INTRODUCTION

In 2014, Mary B. O'Shea was arrested for driving while under the influence of alcohol (DUI).  She pleaded guilty to one count of reckless driving

in violation of Vehicle Code, section 23103, subdivision (a), and was placed on probation for three years.

Nearly six years later, O'Shea filed the present civil action against the City of San Diego (hereafter, the City) and members of the San Diego Police Department (hereafter, the Police Department), alleging the defendants fabricated incriminating evidence against her and obtained her reckless driving conviction through unlawful means. The trial court sustained demurrers to the operative complaint without leave to amend and entered a judgment of dismissal, reasoning the causes of action were untimely, improper for claim-specific reasons, or both. We affirm the judgment of dismissal.

## II

## BACKGROUND

Because this is an appeal from a judgment entered after the sustaining of a demurrer, we accept as true the following factual allegations from the operative complaint. (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 160, fn. 4.)

### 1

### *Factual Background*

On August 22, 2014, Police Department officer Homayoun Nabizadeh pulled O'Shea over on suspicion of DUI. O'Shea had a minor in her vehicle at the time of the traffic stop. She submitted to a blood draw and an alcohol analysis report later showed she had a blood alcohol content of 0.08 at the time of the blood draw. She was charged with multiple DUI-related counts, including DUI with a passenger under the age of 14 (Veh. Code, § 23572, subd. (a)).

On January 16, 2015, O'Shea pleaded guilty to one count of reckless driving in exchange for dismissal of the other charges. The plea agreement

included a handwritten statement that O'Shea "drove a vehicle recklessly with alcohol in [her] system…." O'Shea was fined and placed on probation for a term of three years.

On January 30, 2015, O'Shea filed a complaint against officer Nabizadeh with the Citizens' Review Board on Police Practices (hereafter, the Review Board).[1] She alleged he fabricated information on her arrest report and caused her to endure a "false conviction." The Review Board complaint purportedly went uninvestigated.

On January 27, 2016, O'Shea filed a claim with the City alleging officer Nabizadeh and Internal Affairs Lieutenant Marshall White violated her civil rights. She alleged the incriminating evidence relating to her conviction was "fabricated" and Lieutenant White did not investigate the fabricated evidence when it was brought to his attention. She denied driving recklessly and stated she "took the plea to avoid jail time and a charge of child endangerment." On April 14, 2016, the City denied O'Shea's claim and notified her she had six months to file a court action on the claim pursuant to Government Code section 945.6.

On July 16, 2019, O'Shea filed a petition for writ of error *coram nobis* seeking to withdraw her guilty plea on grounds that her trial counsel had pressured her into accepting the plea agreement and altered the terms of the plea form after she signed it. On November 1, 2019, the trial court denied the request to withdraw the guilty plea. O'Shea filed a renewed motion to

---

[1] At the time O'Shea filed her complaint, the Review Board had a mandate " 'to review and evaluate citizens' complaints against members of the San Diego Police Department and the San Diego Police Department's administration of discipline arising from such complaints.' " (*Davis v. City of San Diego* (2003) 106 Cal.App.4th 893, 896, fn. 2.)

3

withdraw her guilty plea and a motion for reconsideration, both of which the court denied as well.

On October 2, 2019, O'Shea filed a second claim with the City largely repeating the same allegations against officer Nabizadeh and Lieutenant White. She averred officer Nabizadeh lied on his police report and "bore false witness" against her, a member of the Police Department crime lab fabricated a DUI certificate to reflect that she had a blood alcohol content of 0.08, and Lieutenant White failed to investigate her complaints about fabricated evidence. Further, she alleged Internal Affairs Captain Anastasia Smith failed to investigate the fabricated evidence when she learned about it. On September 2, 2020, the City notified O'Shea her claim was a duplicate of her previous claim and the matter was finalized.

## 2

### *The Complaint*

On May 26, 2020, O'Shea filed the present civil action. She filed the operative first amended complaint on December 16, 2020.

The operative complaint—a sprawling, 95-page pleading with dozens of additional pages of attachments—asserted causes of action against the City and numerous members of the Police Department including officer Nabizadeh, Lieutenant White, Captain Smith, Chief of Police David Nisleit, former Chief of Police Shelley Zimmerman, and crime lab manager Jennifer Shen (collectively, the Individual Defendants). It alleged the following causes of action against the defendants: (1) violations of O'Shea's federal civil rights (42 U.S.C. § 1983; hereafter, section 1983); (2) fraud; (3) conspiracy (42 U.S.C. § 1985; hereafter, section 1985); (4) unlawful business practices (Bus. & Prof. Code, § 17200 et seq.; hereafter, the UCL); (5) illegal wiretapping (Pen. Code, § 629.50); (6) violations of O'Shea's right to privacy (Cal. Const., art. 1, § 1);

4

(7) due process and equal protection violations (*id.*, § 7); (8) unreasonable search and seizure (*id.*, § 13); (9) negligence; (10) intentional infliction of emotional distress (IIED); and (11) injunctive relief.

The complaint is difficult to comprehend at times. As best we can discern, it alleges officer Nabizadeh falsified information on the police report documenting O'Shea's arrest and both officer Nabizadeh and crime lab manager Shen falsified incriminating evidence relating to her blood draw. It alleges Lieutenant White, Captain Smith, and former Chief of Police Zimmerman failed to investigate the falsified evidence. It alleges Chief of Police Nisleit "participate[d] in the cover-up" by sharing falsified evidence with O'Shea. Additionally, it alleges officer Nabizadeh, Lieutenant White, and other unidentified members of the Police Department eavesdropped on her telephone calls and erased certain records for telephone calls that she had with members of the Police Department. According to the complaint, the defendants took these actions to conceal her unlawful arrest and the Police Department's "widespread practice of charging DUI suspects" with child endangerment in instances where they are pulled over with minors in their vehicles.

3

*The Demurrers*

On January 15, 2021, the City demurred to the operative complaint. It asserted O'Shea's first and third causes of action (sections 1983 and 1985) must be dismissed for several reasons. First, the causes of action were time-barred because they were subject to a two-year statute of limitations (Code Civ. Proc., § 335.1); O'Shea discovered the alleged civil rights violations no later than January 30, 2016, when she filed her first claim with the City; and O'Shea brought suit more than two years later. Second, the causes of action

were not cognizable under *Heck v. Humphrey* (1994) 512 U.S. 477 (*Heck*) because O'Shea's reckless driving conviction remained valid and a judgment in her favor would necessarily imply the conviction was invalid. Third, the section 1983 cause of action was deficient to the extent it pleaded a claim under *Monell v. Department of Social Services* (1978) 436 U.S. 658 (*Monell*) because it did not allege a deprivation of a constitutional right or a City-adopted policy, custom, or practice that was deliberately indifferent to such a right. Finally, the section 1985 cause of action failed because O'Shea did not allege race- or class-based discrimination.

As for the remaining causes of action, the City argued the fourth cause of action (UCL) must be dismissed because it could not be brought against a governmental entity and, in any event, O'Shea did not file a claim with the City as required by Government Code section 911.2. The City claimed the sixth cause of action (privacy) was uncertain because O'Shea did not articulate facts concerning an alleged violation of her right to privacy. It asserted the seventh (due process/equal protection) and eighth (search/seizure) causes of action must be dismissed because private rights of action for damages may not be brought for alleged violations of the relevant state constitutional provisions. It argued the ninth cause of action (negligence) must be dismissed because the City was immune from tort liability under Government Code section 815. It contended the eleventh cause of action (injunctive relief) must be dismissed because injunctive relief is a remedy, not a cause of action. Finally, it argued the complaint was uncertain in its entirety.

The Individual Defendants also filed a demurrer, which the City joined. In addition to the generally-applicable arguments just discussed, they argued the second (fraud), ninth (negligence), and tenth (IIED) causes of action were

6

untimely because a two-year statute of limitations applied to the negligence and IIED causes of action (Code Civ. Proc., § 335.1); a three-year statute of limitations applied to the fraud cause of action (*id.*, § 338, subd. (d)); and all three causes of action accrued, at latest, by January 30, 2016—yet O'Shea did not sue until May 26, 2020. They sought dismissal of the same three causes of action on grounds that O'Shea did not file a timely claim against defendants Shen, Zimmerman, Smith and Nisleit as required by Government Code section 950.6, and she did not bring suit within six months of the denial of her initial claim against defendants Nabizadeh and White as required by Government Code section 945.6. Next, they asserted the fourth (UCL), fifth (illegal wiretapping), and tenth (IIED) causes of action must be dismissed because O'Shea did not present those claims to the City as required by Government Code section 911.2. They contended the fifth cause of action (illegal wiretapping) must be dismissed because Penal Code section 629.50 does not provide for a private right of action. Finally, they argued they were immune from liability under Government Code sections 820.2 and 820.4, and they were entitled to qualified immunity for the first cause of action (section 1983).

O'Shea filed an opposition that was largely nonresponsive to the defendants' arguments. To the extent it was responsive, it appeared to suggest that on April 1, 2021, O'Shea obtained new evidence—a DMV officer's statement—which purportedly proved that officer Nabizadeh did not have probable cause to arrest her. The defendants allegedly withheld this evidence from her.

The City and the Individual Defendants filed a combined reply in support of their demurrers.

*The Trial Court's Ruling on the Demurrers*

After a hearing, the trial court sustained the demurrers without leave to amend. In its order, the court made the following findings relevant to the City's demurrer arguments (many of which were equally applicable to the Individual Defendants):

- The first and third causes of action (sections 1983 and 1985) failed because: (1) they were untimely; (2) they were not cognizable under *Heck*; (3) O'Shea did not plead an unconstitutional policy or custom necessary to state a *Monell* claim and, in any event, a municipality cannot be held liable on a respondeat superior theory under section 1983; and (4) section 1985 does not provide for a private right of action.

- The fourth cause of action (UCL) failed because it alleged statutory violations by a non-party (the Police Department) and, even if the claim could be construed as being brought against the City, a UCL claim may not be asserted against a governmental entity.

- The sixth cause of action (privacy) failed because O'Shea did not plead facts sufficient to state an actionable privacy claim and she could not articulate how she would amend her complaint to state such a claim.

- The seventh (due process/equal protection) and eighth (search/seizure) causes of action failed because constitutional tort claims for damages are not cognizable under the relevant state constitutional provisions.

- The ninth cause of action (negligence) failed due to Government Code section 815, which immunizes public entities from tort liability.

- The eleventh cause of action (injunctive relief) failed because it sought relief from a non-party (the Police Department) and it would "still fail if applied to the City."

Turning to the arguments raised in the Individual Defendants' demurrer, the court made the following findings in its ruling:

- The Individual Defendants were immune from liability under Government Code sections 820.2 and 820.4, and they were entitled to qualified immunity for the first cause of action (section 1983).

- The second (fraud), ninth (negligence), and tenth (IIED) causes of action were untimely under the governing statutes of limitations. They also failed as to defendants Shen, Zimmerman, Smith and Nisleit because O'Shea did not file timely claims against them. Further, they failed as to defendants Nabizadeh and White because O'Shea did not sue them within six months of the denial of her claim against them.

- The fifth cause of action (illegal wiretapping) failed because there is no private right of action under Penal Code section 629.50, and O'Shea did not present her claim within six months of its purported accrual.

- The tenth cause of action (IIED) failed because O'Shea did not present her claim within six months of its accrual.

Based on these findings, the court sustained the demurrers without leave to amend and entered a judgment of dismissal.[2]

III

DISCUSSION

A

*Legal Principles*

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) " 'We treat the demurrer as admitting all material facts properly pleaded[.]' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) We "accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged." (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37

---

[2] Before the court entered the judgment of dismissal, O'Shea moved for reconsideration of the demurrer order. The court—unaware of the pending motion—entered judgment without addressing the motion. Thereafter, it ruled that its entry of judgment deprived it of jurisdiction to entertain the motion for reconsideration.

9

Cal.App.4th 1397, 1403.) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125; accord *Blank*, at p. 318.)

"In considering a trial court's order sustaining a demurrer without leave to amend, ' "we review the trial court's result for error, and not its legal reasoning." ' " (*Morales v. 22nd Dist. Agricultural Assn.* (2018) 25 Cal.App.5th 85, 93.) We " 'affirm the judgment if it is correct on any theory.' " (*Ibid*.) "And when [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank, supra*, 39 Cal.3d at p. 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.)

O'Shea is a propria persona litigant. "As a propria persona litigant, [she] is entitled to the same but no greater consideration than other litigants. [Citations.] Accordingly, [s]he must follow the rules of appellate procedure. [Citations.] Those rules require an appellate brief to support each point by argument and, if possible, by citation to authority and to provide a citation to the record for a factual assertion. [Citations.] '[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation]. We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' [Citations.] Further, we may treat a point that is not supported by cogent legal argument as forfeited." (*County of Sacramento v. Rawat* (2021) 65 Cal.App.5th 858, 861.)

B

*The Trial Court Properly Sustained the Demurrers Without Leave to Amend*

O'Shea challenges certain aspects of the demurrer order concerning the first (section 1983); second (fraud); third (section 1985); and sixth (privacy) causes of action. We address each of these causes of action in turn.[3]

1

*The Trial Court Properly Sustained the Demurrers*
*to the Section 1983 Cause of Action Without Leave to Amend*

O'Shea contends the trial court erred by denying her leave to amend her section 1983 claim. However, she does not argue that the court erred by finding that she failed to plead a viable section 1983 claim in the operative complaint. Thus, we presume the court correctly sustained the demurrer to the section 1983 claim and we address only whether the court erred by denying her the opportunity to amend the claim. (See *Careau & Co. v. Security Pacific Business Credit Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

Section 1983 is a federal statute establishing a cause of action that may be asserted by a "party injured" against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any … person … to the deprivation of any rights … secured by the Constitution and laws.…" (42 U.S.C. § 1983.) "There are two

___

[3]    O'Shea does not address the fourth (UCL), fifth (wiretapping), seventh (due process/equal protection), eighth (search/seizure), ninth (negligence), tenth (IIED) or eleventh (injunctive relief) causes of action. Because O'Shea does not address these causes of action, we deem them abandoned. (*Alborzi v. Univ. of Southern California* (2020) 55 Cal.App.5th 155, 184 ["[W]here a demurrer is sustained without leave to amend, the appellant's failure to address certain causes of action in the complaint is deemed an abandonment of those causes of action."]; *Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 9, fn. 2 [on appeal from a judgment after an order sustaining a demurrer, unaddressed causes of action deemed abandoned].)

essential elements of a claim under section 1983: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1207.)

The trial court sustained the demurrers to O'Shea's section 1983 cause of action for several reasons. The court found the claim was untimely under the applicable statute of limitation; barred pursuant to *Heck, supra*, 512 U.S. 477; deficient to the extent it sought to plead a *Monell*-type claim; and improper as to the Individual Defendants who were both immune from liability (Gov. Code, §§ 820.2 and 820.4) and entitled to qualified immunity.

On appeal, O'Shea argues she should be allowed to amend her section 1983 cause of action because she learned "new information" from a recently-obtained DMV officer's statement, which she says is inconsistent with certain police reports and child welfare reports documenting her arrest. According to O'Shea, the DMV officer's statement indisputably confirms that officer Nabizadeh lacked probable cause to arrest her. She asserts the new information "changes the complexion of the case" and proves she experienced violations of her rights under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

O'Shea has not established, with reasonable possibility, that her section 1983 claim can be cured by amendment. Indeed, she fails to address how her proposed amendment, based on her new evidence, would remedy any of the pleading defects identified in the demurrer ruling.

For example, O'Shea does not explain how amendment would render her claim cognizable under *Heck, supra*, 512 U.S. 477. O'Shea's claim, as amended, would still rest on allegations that the defendants lacked probable

12

cause to arrest her, subjected her to an unlawful prosecution, and relied on fabricated evidence to persuade her to plead guilty to a crime she did not commit. A judgment in her favor on this claim would necessarily imply the invalidity of her still-extant criminal conviction for reckless driving. Thus, the claim is not cognizable under *Heck*. (*Heck, supra*, 512 U.S. at p. 487 ["[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."].)

O'Shea also does not discuss how, if at all, she could amend her section 1983 cause of action to allege a City-adopted policy, custom, or practice that was deliberately indifferent to a constitutional right—a prerequisite to a viable *Monell* claim. Further, she does not address how amendment would allow her to assert a cause of action against the Individual Defendants, who—according to the trial court—were immune from liability. Because O'Shea addresses none of these pleading defects, she has not shown that the court erred by denying her the chance to file an amended cause of action under section 1983. (*Reeder v. Specialized Loan Servicing LLC* (2020) 52 Cal.App.5th 795, 805 [regardless whether a plaintiff may show that a complaint can be amended for the first time on appeal, the plaintiff must still show how amendment would cure the pleading defects in the complaint].)

O'Shea appears to contend that amendment could cure at least one of the pleading defects that the trial court discussed in its demurrer ruling— namely, the court's finding that her section 1983 cause of action was untimely. As best we can discern, she argues the section 1983 cause of action did not accrue until April 1, 2021, when she obtained the DMV officer's

13

statement and confirmed the arrest was conducted without probable cause. We are not persuaded there is a reasonable probability O'Shea's timeliness problem—which itself is just one of several fatal defects identified in the demurrer order—can be cured by amendment.

"A section 1983 cause of action is subject to the forum state's statute of limitations for personal injury torts. [Citation.] California's statute of limitations governing a personal injury claim is two years. [Citation.] Federal law governs when a cause of action accrues and when the statute of limitations begins to run on a federal civil rights cause of action." (*Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 847.) "The general rule is that a civil rights claim accrues under federal law 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.' " (*Bonelli v. Grand Canyon Univ.* (9th Cir. 2022) 28 F.4th 948, 952.)

Here, O'Shea knew of her injury by January 30, 2016, at the latest. Prior to that date, she had already filed a complaint with the Review Board alleging that officer Nabizadeh falsified information on her arrest report and caused her to be wrongly convicted. Further, on that date, she filed a claim alleging she was convicted of a crime she did not commit, officer Nabizadeh and Lieutenant White violated her civil rights, members of the Police Department fabricated blood draw evidence, and Lieutenant White refused to investigate the falsified evidence. Because O'Shea knew of her allegedly false arrest and conviction by January 30, 2016, the statute of limitations for her claim expired no later than January 30, 2018. But O'Shea did not bring suit until May 26, 2020. Therefore, the section 1983 cause of action is untimely. O'Shea's proposed amendment would not transform this untimely cause of action into a timely one. Thus, the trial court correctly sustained the demurrers to the section 1983 cause of action without leave to amend.

14

2

*The Trial Court Properly Sustained the Demurrers
to the Fraud Cause of Action Without Leave to Amend*

Like the section 1983 cause of action, O'Shea does not claim that the trial court erred by sustaining the demurrers to her fraud cause of action. Rather, she argues she should be allowed to amend her fraud cause of action. She argues amendment is justified because it is now "known that the [arresting] officer committed [c]onstitutional violations" against her. Given the scope of O'Shea's appellate arguments, we consider only whether she should be permitted to amend her fraud cause of action.

The trial court sustained the demurrers to O'Shea's fraud cause of action, in part, on grounds that it was untimely under the applicable statute of limitations. "The statute of limitations for fraud is three years. [Citation.] Although a cause of action generally accrues, triggering the statute of limitations, when it ' "is complete with all of its elements," ' accrual is postponed until a plaintiff discovers, or has reason to discover, the cause of action." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472.)

O'Shea has failed to demonstrate that amendment would remedy the untimeliness of her fraud cause of action. As discussed, O'Shea knew, or had reason to know, that she was the victim of a supposedly fraudulent arrest and conviction by January 30, 2016. However, she did not bring suit until May 26, 2020, rendering the fraud cause of action time-barred. Further, O'Shea's alleged discovery of additional evidence or information confirming the defendants' allegedly improper conduct is inapposite to whether she filed her cause of action in a timely manner. Therefore, O'Shea has failed to establish, to a reasonable probability, that she can amend the complaint to state a timely cause of action for fraud.

There are additional reasons O'Shea is unable to state a fraud cause of action against the Individual Defendants. As the trial court found, O'Shea presented no claim against defendants Shen, Smith, Zimmerman, or Nisleit, as required by the Government Claims Act (Gov. Code, § 911.2). She did present a claim against defendants Nabizadeh and White, but the City denied the claim and O'Shea did not bring suit within the ensuing six months as required by Government Code section 945.6. Thus, the court found O'Shea could not pursue her fraud cause of action against the Individual Defendants.

O'Shea does not address any of these findings. By failing to provide cogent legal arguments concerning these findings, O'Shea has waived her challenges and failed to demonstrate that amendment is warranted as to the Individual Defendants. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 (*Santa Maria*) ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record."]; see also *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817 (*Singh*) ["a rambling and disjointed series of accusations … [cannot] be considered 'meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error' "].)

3

*The Trial Court Properly Sustained the Demurrers*
*to the Section 1985 Cause of Action Without Leave to Amend*

The trial court sustained the demurrers to O'Shea's section 1985 cause of action after finding that it was untimely and *Heck*-barred, among other reasons. O'Shea asserts the court erred in sustaining the demurrers to the section 1985 cause of action. In support of this argument, she makes factual contentions that, in her view, suggest the existence of a vast conspiracy to arrest her without probable cause, convict her through the use of false

16

evidence, and cover up an unlawful prosecution. O'Shea's factual contentions do not demonstrate a reasonable probability that she can state a viable section 1985 cause of action.

In California, a conspiracy claim brought under section 1985 is subject to the state's two-year statute of limitations for personal injury actions. (*Taylor v. Regents of Univ. of Cal.* (9th Cir. 1993) 993 F.2d 710, 711 [applying statute of limitations for personal injury actions to section 1985 claim]; Code Civ. Proc., § 335.1 [two-year statute of limitations applies to personal injury actions].) "Although California law determines the *length* of the limitations period, federal law determines when a civil rights claim *accrues*." (*Lukovsky v. City and County of San Francisco* (9th Cir. 2008) 535 F.3d 1044, 1048.) In the Ninth Circuit, a conspiracy claim accrues in accordance with the last overt act doctrine. (*Gibson v. U.S.* (9th Cir. 1986) 781 F.2d 1334, 1340.) "Under this doctrine, '[i]njury and damage in a civil conspiracy action flow from the overt acts, not from "the mere continuance of a conspiracy." ' " (*Ibid.*) An overt act is " '[A]n outward act done in pursuance of the crime and in manifestation of an intent or design, looking toward the accomplishment of the crime.' " (*People v. Von Villas* (1992) 11 Cal.App.4th 175, 243.)

The trial court found the section 1985 cause of action was untimely because the applicable statute of limitations was two years, "the actions at issue here occurred in 2014 and 2015," and O'Shea brought suit in 2020. Although O'Shea proclaims the court erred in sustaining the demurrers, she does not articulate *why* the court erred. She does not address the court's timeliness analysis or identify the date she believes her section 1985 cause of action accrued; in fact, she does not even argue that the cause of action was timely. Her failure to provide a cogent legal argument concerning timeliness waives any challenge she may have to the trial court's determination on this

17

issue. (*Santa Maria, supra*, 211 Cal.App.4th at pp. 286–287; *Singh, supra*, 227 Cal.App.4th at p. 817.)

In the portion of her opening appellate brief discussing the section 1985 cause of action, O'Shea states in passing that in March 2020, Police Department Captain Stephanie Rose sent her a blood analysis report from her arrest. It is unclear what relevance, if any, she ascribes to the delivery of the blood analysis report. But, insofar as she is implying that Captain Rose's delivery of the blood analysis report was the last overt act of the conspiracy giving rise to the section 1985 cause of action, we are not persuaded. None of the defendants is alleged to have delivered the blood analysis report at issue; rather, it was allegedly performed by a non-party who has not been identified as a conspirator or accomplice to the conspiracy. Moreover, the alleged delivery of the blood analysis report merely confirmed O'Shea's existing suspicions that the defendants had fabricated evidence against her to convince her to plead guilty to reckless driving. There is no claim made that the blood analysis report was delivered to further any conspiracy. Thus, O'Shea's passing reference to Captain Rose's alleged delivery of the blood analysis report does not establish that the section 1985 claim was timely. Given our conclusion that O'Shea has failed to demonstrate error on the issue of timeliness, it is unnecessary for us to assess whether the section 1985 claim is *Heck*-barred or subject to dismissal for other reasons.

Further, although O'Shea challenges the propriety of the order sustaining the demurrers to her section 1985 cause of action, she does not argue that she can allege additional facts to properly state a claim. Thus, we do not consider whether amendment could cure the pleading defects of the section 1985 cause of action. (See *Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 439, fn. 21 ["[Plaintiff] does not argue on appeal that he could amend his

18

complaint to allege additional facts such that he could properly state a claim for quiet title pursuant to this theory. Accordingly, we conclude that [plaintiff] has not demonstrated how he could amend his complaint to properly state such a claim."]; *Brown v. Deutsche Bank National Trust. Co.* (2016) 247 Cal.App.4th 275, 282 ["[Plaintiff] does not address how she could amend her complaint to assert a valid cause of action. We therefore agree with defendants that she has forfeited any argument that the trial court abused its discretion in sustaining the demurrer without leave to amend."].)

4

*The Trial Court Properly Sustained the Demurrers*
*to the Privacy Cause of Action Without Leave to Amend*

On appeal, O'Shea states she "[c]an [s]atisfy the [s]ixth [c]ause of [a]ction" because the "facts illustrate that [officer Nabizadeh] violated her right to freedom, safety and privacy over and over …." She then states that officer Nabizadeh subjected her to a "false arrest," fabricated evidence "to obtain a conviction at any cost," and "forced [her] to endure a needle." As best we can discern from these statements, O'Shea appears to argue that the trial court erred by denying her the chance to amend her complaint to allege a violation of her right to privacy under the state constitution. To the extent we have properly interpreted O'Shea's argument, we conclude she has not shown a reasonable possibility that she can plead a valid cause of action for violation of her right to privacy.

"[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39–40 (*Hill*).) "A defendant may prevail in a state constitutional

19

privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests. Plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests." (*Ibid.*)

Insofar as O'Shea contends that her supposed arrest without probable cause and her unlawful conviction establish a violation of her constitutional right to privacy, O'Shea has not shown that she is entitled to amend her complaint. In particular, O'Shea's claim of a violation of her constitutional right to privacy would necessarily imply the invalidity of her reckless driving conviction; thus, it would not be cognizable under *Heck, supra*, 512 U.S. 477.

O'Shea's assertion that officer Nabizadeh "forced [her] to endure a needle" also does not establish, to a reasonable probability, that she can allege a valid cause of action for violations of her right to privacy. Irrespective of whether an arrestee possesses a legally protected privacy interest in his or her blood, O'Shea has not demonstrated that she had a reasonable expectation of privacy under the circumstances because, by her own account, she voluntarily consented to the blood draw at issue.[4] Her consent to the blood draw fatally undermines any notion that her privacy rights were violated. (*Hill, supra*, 7 Cal.4th at p. 26 ["If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a

---

[4] In particular, the operative complaint states that O'Shea told officer Nabizadeh "she would prefer to take a blood test" because she had a form of asthma that would make it difficult for her to submit to a breathalyzer. Elsewhere, the operative complaint stated that O'Shea "requested [a] blood [draw] due to asthma …."

20

reasonable person' so as to justify tort liability."]; *TBG Ins. Services Corp. v. Superior Court* (2002) 96 Cal.App.4th 443, 450, fn. 5 ["we view [real party in interest's] consent as a complete defense to his invasion of privacy claim"].)

O'Shea has not identified any other allegations supporting her privacy cause of action. Therefore, she has failed to demonstrate that there is a reasonable possibility that she could allege a viable cause of action for violation of her constitutional right to privacy.

C

*The Trial Court Committed No Other Reversible Error*

In addition to attacking the merits of the demurrer order, O'Shea contends the trial court displayed judicial bias against her during the demurrer hearing. We reject this argument because the record does not disclose even a whisper of judicial bias.

O'Shea argues the trial court exhibited bias against her because it did not issue a tentative ruling on the demurrers, which supposedly would have allowed her to prepare for the hearing more effectively. The court's decision not to issue a tentative ruling does not establish bias. Indeed, the Rules of Court expressly grant trial courts the *option* to issue tentative rulings—or not to do so. (Cal. Rules of Court, rule 3.1308(e) [the California Rule of Court governing tentative rulings "does not require any judge to issue tentative rulings"]; see Super. Ct. S.D. County, Local Rules, rule 2.1.19.B ["Prior to the hearing, any civil department may issue a tentative ruling in a law and motion matter, in the sole discretion of the assigned judge."].)

O'Shea argues the court also showed bias against her because, during the hearing, it stated that it "agree[d] with the City's position on every basis" set forth in its demurrer. Similarly, she asserts the court demonstrated bias by ruling against her on her privacy cause of action. The court's rulings and

21

its expression of its opinions regarding the parties' arguments does not evince bias. (*People v. Farley* (2009) 46 Cal.4th 1053, 1110 [" '[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' "]; *Jack Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1031 ["Expressions of opinion uttered by a judge, in what he conceived to be a discharge of his official duties, are not evidence of bias or prejudice."].)

Next, O'Shea contends the court was biased because it "side[d] with the defendants without even knowing the causes of action" in the complaint. In support of this claim, she cites an excerpt from the reporter's transcript in which the court opined as follows: "Is there a fraud cause of action in this complaint? What cause of action is the fraud cause of action? I don't think you've alleged fraud as a cause of action." O'Shea's reference to the record is both incomplete and misleading. During the colloquy at issue, the court asked clarifying questions like those just discussed because O'Shea mislabeled her fraud cause of action as a claim brought under Civil Code section 3294, the general statute governing punitive damages. The trial court's efforts to clarify the nature of O'Shea's mislabeled fraud cause of action does not reveal bias on the part of the court.

Finally, O'Shea argues the court was biased because it did not allow her to speak during the demurrer hearing. The record belies this argument. The court afforded O'Shea ample opportunity to articulate her arguments why the demurrers should be overruled. To the extent O'Shea asserts she should have had unfettered authority to speak whenever she wanted during the hearing, we do not agree. A trial court's inherent power to control litigation before it entitles the court " ' "to exercise reasonable control over all proceedings connected with pending litigation ... in order to insure the

22

orderly administration of justice." ' " (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351; see Code Civ. Proc., § 128, subd. (a)(3) ["Every court shall have the power … [t]o provide for the orderly conduct of proceedings before it, or its officers."].) The trial court acted well within the scope of its inherent authority during the demurrer hearing.

D

*O'Shea Has Not Established that*
*Amendment is Warranted to Add New Defendants*

O'Shea argues in passing that she should be permitted to amend her complaint to add the Police Department and certain unnamed doe defendants as new defendants to the case. However, she does not identify the specific causes of action she would allege against each new defendant, the allegations she would make against each such defendant, or the means by which she could cure each of the generally-applicable pleading defects discussed elsewhere in this opinion. For all these reasons, O'Shea is not entitled to amendment to add new defendants into the case.

IV

DISPOSITION

The judgment is affirmed. Each party is to bear its own appellate costs.


McCONNELL, P. J.


WE CONCUR:


AARON, J.


DATO, J.


23